# CATHERINE PFEIFER

v.

# THE TOWN OF LAKE.

*Municipal Corporations — Negligence—Step in Sidewalk — Personal Injuries.*

1. The question as to whether there was negligence in the manner of constructing a given sidewalk is for the jury.

2. Municipal authorities are responsible for the proper construction of their sidewalks.

3. In an action brought to recover from a municipality for a personal injury alleged to have been occasioned by a step in one of its sidewalks, this court holds that the trial court erred in instructing the jury, at the close of the plaintiff's testimony, to find for the defendant, and that the case should have been left to the jury, in order that they might determine, from all the evidence, whether the sidewalk was in proper condition or defective, and whether the injury was due to such defect, if any, or to negligence or want of care on part of the plaintiff.

[Opinion filed December 11, 1890.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Messrs. WHITEHEAD & PICKARD, for appellant.

No appearance for appellee.

MORAN, P. J.   This action was brought to recover for injuries sustained by appellant, by falling upon the sidewalk in the night time.   The evidence tended to show that on the night of March 10, 1887, the plaintiff was walking with her husband south on Stewart avenue, in the town of Lake.   It was dark, and she could not see, and in going along she suddenly fell down a step, which was in the sidewalk at that point, and was injured.   The step was a descent of some twelve inches from the sidewalk, along which she had approached, to a continuation thereof on a lower grade, and the walk had been built in that manner some six months before.

A gas lamp, which stood near by this point where the step was, had not been lighted on the evening of the accident, and the light from more distant lamps was obstructed by heavy trees on both sides of the walk, so that the point where this descent was, was in darkness, and one walking along there could not see that there was a change in the grade of the walk.

The court, at the conclusion of the plaintiff's evidence, instructed the jury to find for the defendant.   We think there was a question for the jury on this state of facts.   It can not

be said as a matter of law that such construction of the side-walk, and leaving it unlit at night, is not negligence. The question of whether there was negligence in so constructing the walk was one of fact.

The town authorities were responsible for the proper construction of this sidewalk. It is their duty to see that such structures are properly made and reasonably safe. Alexander v. Mount Sterling, 71 Ill. 366; Dillon Mun. Cor., Sec. 1003, and cases cited.

The case should have been left to the jury, so that they might determine from all the evidence whether the sidewalk was in proper condition, or defectively constructed, and whether the injury to plaintiff was due to such defect, if any, or to her own negligence or want of care. Clemence v. City of Auburn, 66 N. Y. 334; City of Chicago v. Gallagher, 44 Ill. 295; City of Chicago v. Langloss, 66 Ill. 366.

Negligence, whether of plaintiff or defendant, is a question of fact for the jury on all the evidence. Fisher v. Cook, 23 Ill. App. 621; Wight Fire Proofing Co. v. Poczekai, 30 Ill. App. 266; Same case, 130 Ill. 139.

For the error in taking the case from the jury, the judgment must be reversed and the case remanded.

*Reversed and remanded.*

WATERMAN, J., dissenting. In this case it appeared that there was in the sidewalk where the plaintiff was injured, a change of level of about twelve inches, with a step in between; there was a street lamp near, which upon the night of the accident was not lighted, and the plaintiff, not seeing the step, fell and sprained her ankle. The plaintiff did not claim that the sidewalk was badly constructed or out of order. Mr. Crocker, opposite whose residence the injury occurred, being called by the defendant, testified that the walk was in good order, built from good substantial plank six feet wide.

Counsel for plaintiff objected to this as *immaterial*, saying, "I object to this as immaterial. We claim that the step was dangerous, and dangerous after night because it was not lighted."

The Court: "You are relying, then, simply on that there was a step there?"

Mr. Pickard: "There was a dangerous change of level simply because it was not lit. We do not claim that the sidewalk was bad, but we claim that the steps were dangerous."

The Court: "The city of Chicago is not bound to have any of its sidewalks upon the same level."

Mr. Pickard: "We understand that, it is not merely for the change of level; we claim that the unlighted condition of that change made it dangerous; that they should have properly protected that change."

"We claim that there was nothing done. They constructed this grade in such a shape that a person could not see after night whether there was a change of grade there or not; that there was nothing done in placing a lamp there at night to light it after dark; that the whole thing was dangerous, because of the dangerous condition of things at that time."

Plaintiff's case was urged upon the trial below on the theory that the failure to light this place constituted negligence. No complaint was made of the character of the walk, except in view of its unlighted condition.

The claim of plaintiff is, by this statement of her counsel, made to depend upon the concurrence of two things, viz.: The existence in the walk of these two steps, and the fact that on the occasion of the injury, the place where it occurred was not lighted.

No complaint is made of the character or condition of the steps; neither as to their form, size, height, strength, sufficiency, position or repair, does the plaintiff claim to show negligence. Her position is, and was, simply that the steps were there, and, being unlighted, she, not knowing of their existence, fell over them, and was injured.

In the City of Freeport v. Isbell, 83 Ill. 440, it was held that the court erred in allowing, for the purpose of showing negligence, the introduction of evidence that the street where the accident occurred was not lighted when the injury was received; and the court say that whether the city will light,

its streets or not, is a matter within its discretion, and that "to hold that a city or incorporated town was under a legal obligation to thus provide the streets with lights, might well be regarded as an act of usurpation on the part of the courts, of the legislative power, which has been exclusively delegated to the legislative department of the municipality."

But even if the town was under a legal obligation to light the street at this point, it is not contended that it had any notice, or that notice could be presumed or inferred that the street lamp near by was not burning on the night in question. City of Chicago v. Murphy, 84 Ill. 224; Same v. Stearns, 105 Ill. 554; City of Chicago v. Watson, 6 Ill. App. 344, 348; Dillon on Municipal Corporations, Sec. 1026.

The case, therefore, becomes one in which the gravamen of complaint is that there was negligence because steps were constructed in the sidewalk at a place where there was no necessity that there should be any. It is because the town determined to, and did construct a particular kind of sidewalk, that it is to be held liable.

The complaint is not that the work it did was improperly or negligently done, but that its plan—design—for a walk, was improper and injudicious, not that an insufficient or weak walk was built. It was dangerous, and there was negligence, if at all, because there were steps instead of a level or an inclined plane. This is a matter over which the courts have no control. They cannot compel the town to build any walk at all; because it has the power to grade and improve streets, it is not under obligation to do so. And, having a discretion as to whether it will improve at all, it has also a discretion as to the kind of improvement, if any, it will make. Dillon on Municipal Corporations, Sec. 94.

If it does improve, it is bound to the use of reasonable diligence, that the work is constructed and kept in such a manner as to be reasonably safe for persons exercising ordinary care. Is it bound to do more than this? Is its judgment as to what is the best kind of improvement subject to review by court or jury in cases where the court can not say that the plan itself is so dangerous that its construction was negligence? This question has been often under consideration.

In Carr v. The Northern Liberties, 35 Penn. St. 324, action being brought for an alleged improper construction of a sewer, whereby plaintiff's house was flooded, the court says: "If we undertake to correct the evil in such a case as this, on the ground of carelessness, we see not how to escape from the necessity of submitting the propriety of all acts of grading and draining in our towns to the decision of juries. Any street may be complained of as being too steep or too level; gutters being too deep or too shallow; and there may be evidence that these things were carelessly resolved upon, and then a tribunal that is foreign to the municipal system, will be allowed to intervene and control the town officers. And the end is not yet, for if a regulation be altered to suit the views of one jury, the alteration may give rise to another case in which the new regulation will be likewise condemned. This theory is so vicious that it can not possibly be admitted."

In Childs v. City of Boston, 4 Allen, 41–51, a case three times argued, it being an action for damages arising from the flooding of premises by a sewer, the court say:

"Upon mature deliberation, we are all of the opinion that the defendants are not responsible for any defect or want of efficiency in the plan of drainage adopted, although it might expose the plaintiff to incidental inconvenience."

In Urquhart v. City of Ogdensburg, 91 N. Y. 67, the case of Clemence v. The City of Auburn, 66 N. Y. 334, in which a contrary doctrine would seem to be announced, is reviewed, and the rule declared to be that "where power is conferred on officers of a municipal corporation to make improvements, such as streets, sewers, etc., and keep them in repair, the duty to make them is *quasi* judicial or discretionary, involving a determination as to their necessity, requisite capacity, location, etc. For a failure to exercise this power, or an erroneous estimate of the public needs, no civil action can be maintained. But when the discretion has been exercised, and the improvement made, the duty to keep it in repair is ministerial, and for neglect to perform such duty an action will lie," and this rule was held to be as applicable to work done as to a design proposed. To the same effect is

Pfeifer v. Town of Lake.

Lansing v. Toolan, 37 Mich. 152; Marquette v. Cleary, 37 Mich. 482; Darling v. Bangor, 68 Me. 108; Steinmeyer v. City of St. Louis, 3 Mo. App. 256; Van Pelt v. City of Davenport, 42 Iowa, 308.

In Gould v. City of Topeka, 32 Kan. 485–593, this subject was attentively considered, and the conclusion reached, that where a street, as planned or ordered by the governing board of a city, is so manifestly dangerous that a court upon the facts can say, as a matter of law, that it was dangerous and unsafe, the city should be held liable, and this seems to the writer of this opinion the better rule.

In City of Chicago v. Gallagher, 44 Ill. 295, and in same v. Langloss, 66 Ill. 361, the city was held liable for injuries resulting from the dangerous nature of the improvement, as constructed by the city; but the statement of facts in each case shows clearly that the danger and the injury were the result of acts on the part of the city, which the court could say, *as a matter of law*, was negligence, and the same is true of the case of Prideaux v. City of Mineral Point, 43 Wis. 513.

The greater weight of authority, as well as reason, seems to me to be opposed to an extension of the liability of municipal corporations to cases in which the negligence, if any, consists in an alleged defect in the plan or mode of improvement, and is one concerning which men of experience in such matters might well differ.

It ought not to be the case, that if the town build a stone sidewalk, which in wet and snowy weather is very slippery, the question of whether it was not negligent in so doing, shall be submitted to a jury, because a plank or gravel walk may be less dangerous, or a fall upon such would be less serious.

Is it the case that if, at a change of grade, the way of descent provided by the municipality is by steps, a traveler who falls down them can have damages at the hands of a jury, because, in their opinion, steps are dangerous, and an inclined plane is not? And this done, can another equally intelligent jury mulct the town at the instance of one who slipped upon an inclined walk, no complaint being made in either case as to the kind or condition of steps or plane?

To declare it to be one of the functions of a jury in all cases, to pass upon and pronounce safe or dangerous the plan of street improvements resolved upon and constructed by a municipality, is simply to take from the authorities the *quasi* judicial discretion vested in them in respect to such matters, and to leave it ever uncertain as to what shall be done in order that juries may not punish the municipality for not adopting a plan of improvement, such as they deem most secure.

The distinction pointed out in 91 New York, *supra*, as to the distinction between acts of municipal authorities, discretionary and ministerial, is vital and should be maintained.

The act of the town of Lake in placing in a walk two steps where perhaps none were necessary, not being one which the court can say as a matter of law was negligence, the judgment of the court below should, I think, be affirmed.